IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAFON CANTY,                        *

     Plaintiff,                      *

v.                                  *          Civil Action No. GLR-18-1404

DAYENA M. CORCORAN,                 *
et al.,
                                    *

     Defendants.                     *

                                    *
                                   ***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants Jeremy Payne and Justin Yutzy's

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 78).

The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6

(D.Md. 2021). For the reasons set forth below, the Court will deny Defendants' Motion,

which it construes as a motion for summary judgment.

## I.   BACKGROUND

This action arises from claims of retaliatory acts committed against Plaintiff Dafon

Canty, an inmate at North Branch Correctional Institution ("NBCI") in the Maryland

Division of Correction, by Defendants Lt. Vaughn Whiteman, Sgt. Derek Baer,

Correctional Officer ("C.O.") Christopher McKenzie, C.O. Rodney Adkins, C.O. Jeremy

Payne, and C.O. Justin Yutzy, all correctional officers employed by NBCI.[1]

---

[1] The Court entered judgment in favor of Defendants Corcoran, Nines, Bohrer,
Johnson, Forney, Yutzy, Payne, and Vanmeter on November 23, 2020. (Order ¶¶ 2–3, ECF
No. 55).

A. **Factual Background**[2]

Plaintiff Dafon Canty is a state prison inmate presently housed at NBCI in Cumberland, Maryland. (Am. Compl. ¶ 1, ECF No. 77). He alleges that Defendants violated his civil rights by retaliating against him in response to his initiation of administrative remedy procedures ("ARP") beginning in 2018 and continuing through 2021. (Id. ¶¶ 11–44). Canty also alleges that Defendants undertook these retaliatory acts in concert with one another, amounting to a civil conspiracy. (Id. ¶¶ 45–57).

1. **Retaliation in 2018**

On January 3, 2018, Canty was assigned to Housing Unit #2. (Id. ¶ 12). Canty grew concerned after spotting Darryl Powell, an inmate he had previously fought, on the tier. (Id. ¶ 13). Canty became worried that they might get into another fight, so he submitted a "request-slip" to Sgt. Gregory Forney about his concerns. (Id. ¶ 14). When Forney didn't respond over the next few days, Canty requested to meet with him in person. (Id. ¶¶ 14–15). During the meeting, Canty told Forney that he felt threatened by Powell and Canty's cellmate, Courtney Bryant, who was believed to be in a gang.[3] (Id. ¶ 15). Forney told Canty that Powell and Bryant did not pose a real threat. (Id. ¶ 16). Nonetheless, Forney explained that he was transferring to another correctional institution, but Canty could raise any concerns with Forney's replacement. (Id. ¶ 16).

_____

[2] For the purposes of this Motion, Defendants do not challenge the factual assertions alleged in the Amended Complaint.

[3] Prison administrators refer to potential gang members as "[s]ecurity threat group members." (See Am. Compl. ¶ 15).

In early January 2018, Canty filed an ARP outlining his concerns about being around Powell, but no one responded. (Id. ¶ 18). On January 22, 2018, Canty submitted a grievance about the threat, which the Inmate Grievance Office administratively dismissed on March 5, 2018. (Id.). On January 26, 2018, Canty filed another ARP, this time about "escalating tension with Bryant." (Id. ¶ 19). The ARP was not processed. (Id.).

Canty continued to try and raise his security concerns to the facility. On February 3, 2018, he submitted an ARP to the Maryland Division of Correction's Office of the Commissioner, seeking a transfer to another cell and a modified recreation schedule. (Id. ¶ 20). The Office forwarded the ARP to NBCI, and NBCI dismissed it for procedural reasons. (Id. ¶ 21). Canty appealed the dismissal to the Office of Commissioner, which returned the ARP to NBCI for it to consider. (Id.).

At some point after the ARP was returned to NBCI, Defendant Whiteman pushed Canty to withdraw the ARP. (Id. ¶ 22). Canty declined but does not believe that his ARP was "further processed." (Id. ¶ 22). Undeterred, on February 28, 2018, Canty wrote a letter to Defendant Baer regarding Canty's safety concerns with his housing and recreation schedule. (Id. ¶ 23). Canty also complained that Defendants' McKenzie and Adkins had failed to address his concerns. (Id.). Canty also wrote informal complaints about the same to Defendant William Bohrer, the Chief of NBCI Security, and Assistant Warden Jeffrey Nines. (Id. ¶ 24). The informal complaints were then sent to Defendant Whiteman, who told Canty that inmates can request a "convenience move" once every six months. (Id.).

On March 2, 2018, Canty filed another ARP about his safety concerns with his housing. (Id. ¶ 25). The "Acting Warden" ultimately dismissed the ARP. (Id. ¶ 25). On

March 4, 2018, Canty spoke to Baer and asked if he had read Canty's February 28, 2018 letter. (<u>Id.</u> ¶ 26). Baer told Canty that he should direct any transfer requests to his tier officers. (<u>Id.</u>). Canty told Baer that he had already raised the issue with Defendants Adkins and McKenzie but they had refused to move him. (<u>Id.</u>). Baer shrugged his shoulders in response. (<u>Id.</u>).

On March 5, 2018, Canty wrote another informal complaint about his placement and recreation schedule to Nines, but Canty did not receive a response. (<u>Id.</u> ¶ 27). The next day, Canty again spoke to Adkins about switching cells. (<u>Id.</u> ¶ 28). Adkins discussed the request with Baer, and Baer told Canty to stop writing grievances and asking to move or Baer would place him in segregation. (<u>Id.</u> ¶ 28).

Less than a week later, Canty and Bryant got into a violent fight. (<u>Id.</u> ¶ 29). After the fight, Canty again tried to talk to Adkins and Baer about his safety concerns. They allegedly told him that they "did not care about his problems," he should stop filing grievances, he would not be moved, and that he needed to fight back. (<u>Id.</u>). Canty told the officers that he would write them up, and the officers responded that they "could come up with a basis to write Canty up." (<u>Id.</u> ¶ 30). Soon after, Canty filed another ARP with the Commissioner, this time complaining about Adkin and Baer's attempts to stymy his complaints. (<u>Id.</u> ¶ 31).

On March 13, 2018, Baer, Whiteman, McKenzie, and Adkins told Canty that if he moved out of his cell or continued to file grievances, he would be sent to disciplinary segregation. (<u>Id.</u> ¶ 32). Later that day, Canty wrote another letter to the Commissioner, updating him on his latest encounter with Baer, Whiteman, McKenzie, and Adkins. (<u>Id.</u>

¶ 33). On March 31, 2018, a couple weeks later, McKenzie issued a Notice of Inmate Rule Violation alleging that Canty had entered an "out of bounds" area on his floor. (Id. ¶¶ 34–35). Canty alleges that McKenzie's allegation was false and done to punish him for his complaints. (Id. ¶ 25). As a result of McKenzie's Notice, Canty was restricted to his cell for thirty days starting on April 24, 2018. (Id. ¶ 37).

On the morning of April 24, 2018, Canty attempted to give McKenzie an ARP detailing Whiteman's failure to respond to his previous complaints, but McKenzie "refused to submit the ARP and complained about the ARPs that Canty had written." (Id. ¶ 38). About thirty minutes later, McKenzie, Payne, and Yutzy entered Canty's cell and told him to "cuff up." (Id. ¶ 39). Payne and McKenzie then searched Canty's cell, mishandling and destroying Canty's personal property. (Id.). They poured shampoo on Canty's books and intentionally broke Canty's MP3 player. (Id.). When Canty complained that they were ruining his things, Payne told him to "shut up." (Id.). Pain declared that it was "'[their] turn' because Canty ke[pt] writing grievances on [his] buddies Adkins and McKenzie." (Id.). Canty alleges that at the time, "the three COs were aware that Canty was in the process of filing this civil lawsuit." (Id. ¶ 40).

After the cell search concluded, Yutzy escorted Canty to a holding cell because other inmates were returning from the yard. (Id. ¶ 41). Yutzy told Canty that the COs who conducted the search had falsely accused Canty of threatening Payne and Adkins. (Id.). While Canty was waiting to be escorted to disciplinary segregation, he saw Whiteman and asked why the officers had falsely accused him. (Id. ¶ 42). Whiteman replied, "I told you if you keep writing grievances on us you [will] pay for it." (Id.). Canty alleges that

5

Whiteman knew that Canty planned to file an ARP regarding the cell search. (Id.). Whiteman said he wanted Canty on lock up to stop Canty from filing more grievances. (Id.).

After Canty was moved to disciplinary segregation, Defendant Michael Vanmeter, an officer at NBCI, provided Canty with a partial copy of a Notice of Inmate Rule Violation. (Id. ¶ 43). The Notice included allegations that Canty had threatened Payne and Adkins. (Id.). Canty alleges that this Notice was done in retaliation to punish him for exercising his First Amendment rights. (Id.). On May 10, 2018, Canty was found guilty of the allegations in the Notice and was sentenced to 200 days in disciplinary segregation. (Id. ¶ 44).

### 2.  Retaliation after Canty Filed Suit

Canty alleges that in March 2020, after he filed this lawsuit, Whiteman approached him regarding an ARP he had filed concerning his limited access to the prison's law library. (Id. ¶ 45). Whiteman asked him to withdraw the ARP, but he refused. (Id. ¶¶ 46–47). Canty alleges that Whiteman became angry and said something to the effect of, "[t]hink about what you're doing, remember this works both ways, and you know what's going to happen. I always get the last laugh, the same as the last time up you kept writing us up." (Id. ¶ 48).

On February 1, 2021, Canty filed an ARP alleging he had been assaulted by an officer. (Feb. 1, 2021 ARP at 1, ECF No. 77-10). Four days later, on February 5, 2021, Whiteman and other unidentified officers approached Canty and made comments to the effect of, "let's show Canty black lives don't matter, plus this p***y likes filing lawsuits, thinks he's doing something, d**n, I thought the street code was you a snitch, n****r, you

tell." (Am. Compl. ¶ 50). Canty asked the officers why they were confronting him and told them that he would report their behavior. (Id. ¶ 51). Whiteman mentioned Canty's lawsuit and said something to the effect of, "shut your ****ing mouth before I put you in the holding cell and find some contraband if you don't shut up." (Id. ¶ 52).

Whiteman searched Canty's cell, poured out bottles of lotion and body wash, threw Canty's new MP3 player on the floor, and damaged two of Canty's new books. (Id. ¶ 53). Whiteman "dared" Canty to complain again and threatened that "if Canty did so, Whiteman would place him in another 200 days of disciplinary segregation." (Id. ¶ 54).

In mid-June 2021, after Canty spoke with his counsel regarding the case, Forney placed Canty in an isolation cell for five days. (Id. ¶ 56). Canty alleges that he fears further retaliation. (Id. ¶¶ 55, 57).

### B.    Procedural History

On May 9, 2018, Canty filed his original pro se Complaint naming ten defendants. (ECF No. 1). Canty filed a Supplemental Complaint on August 16, 2018, naming three additional defendants, including Payne and Yutzy. (ECF No. 7). On March 14, 2019, the original ten defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 23). Canty filed an Opposition on April 17, 2019. (ECF No. 26). On March 31, 2020, the Court denied the Motion, finding that it was not ripe for resolution because Payne, Yutzy, and Vanmeter had not been served with the Complaint. (ECF No. 41). On August 19, 2020, Payne, Yutzy, and Vanmeter sought to join the previously filed dispositive Motion. (ECF No. 46). Two days later, Defendants filed a Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF

No. 47). On September 8, 2020, the Court entered an Order denying Canty's Motions to Appoint Counsel without prejudice, granting Payne, Yutzy, and Vanmeter's Motion to Join Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment, and granting Canty until October 13, 2020 to file any additional response in opposition to the renewed Motion. (ECF No. 49).

On November 23, 2020, this Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF Nos. 54, 55). The Court entered judgment in favor of Defendants Dayena Corcoran, Nines, Bohrer, Mary S. Johnson, Forney, Yutzy, Payne, and Vanmeter. (Order ¶¶ 2–3, ECF No. 55). The Court denied the Motion as to Canty's First Amendment retaliation and civil conspiracy claims against Defendants Baer, Whiteman, McKenzie, and Adkins. (Id. ¶ 4). The Court also granted Canty's Motion for Appointment of Counsel. (Id. ¶ 9).

On April 14, 2021, Canty filed a Consent Motion for Leave to File Amended Complaint that the Court granted that same day. (ECF Nos. 71, 72). On June 29, 2021, Canty filed an Amended Complaint in which he, inter alia, asserts claims against Payne and Yutzy, in whose favor the Court previously entered judgment. (Am. Compl. ¶¶ 6, 7; see ECF No. 55). The two-count Amended Complaint asserts the following claims against Defendants Whiteman, Baer, McKenzie, Adkins, Payne, and Yutzy: First Amendment retaliation under 42 U.S.C. § 1983 (Count I); and civil conspiracy under 42 U.S.C. § 1983 (Count II). (Am. Compl. ¶¶ 58–68). Canty seeks declaratory relief, compensatory and punitive damages, costs, and attorneys' fees. (Id. at 15–16).

On July 29, 2021, Payne and Yutzy filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (ECF No. 78). On August 12, 2021, Canty filed an Opposition. (ECF No. 82). Defendants filed a Reply on August 17, 2021, (ECF No. 83), and a Supplemental Reply on August 20, 2021, (ECF No. 84).

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Conversion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d)[.]" Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant

expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise satisfactorily the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Est. of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Here, both requirements for conversion are satisfied. Defendants styled their Motion as a motion in the alternative for summary judgment. See Moret, 381 F.Supp.2d at 464. Thus, Canty was on notice that the Court might resolve Defendants' Motion under Rule 56.[4] While Canty filed an Opposition, he did not include a request for more time to conduct further discovery. Rather, Canty asks the Court to deny Defendants' Motion so he "can proceed with discovery, including depositions of all Defendant correctional personnel."

---

[4] This is especially true considering the Court previously resolved Defendants' Motion to Dismiss, or in the Alternative, Motion for Judgment under Rule 56 as to Canty's initial Complaint. (See ECF No. 54).

(Pl.'s Opp'n Defs.' Mot. Dismiss Alt. Mot. Summ. J. ["Opp'n"] at 12, ECF No. 82). This statement, without more, does not "put the district court on notice of the reasons why summary judgment [is] premature." See Harrods, 302 F.3d at 245. Thus, the Court will treat the Motion as one for summary judgment.

### 2. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 140 (4th Cir. 2008) (quoting <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law. <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**B.   <u>Analysis</u>**

    **1.   Law of the Case Doctrine**

Defendants argue that the law of the case doctrine precludes Canty from reviving claims previously decided by the Court without seeking reconsideration. (Reply Pl.'s Opp'n Defs.' Mot. Dismiss Alt. Summ. J. ["Reply"] at 13, ECF No. 83). The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should

continue to govern the same issues in subsequent stages in the same case." <u>Chase v. Dep't of Pub. Safety & Corr. Servs.</u>, No. ELH-18-2182, 2020 WL 1914811, at *10 (D.Md. Apr. 20, 2020) (quoting <u>Musacchio v. United States</u>, 577 U.S. 237, 244 (2016)). In practice, the doctrine stands for the proposition that throughout the life of a case, the legal decisions made in that case should remain the law. <u>Id.</u> The law of the case doctrine applies to both vertical and horizontal judicial review. <u>See</u> <u>id.</u> at *11. When applied vertically, "once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution." <u>Mangum v. Hallembaek</u>, 910 F.3d 770, 776 (4th Cir. 2018) (quoting <u>Invention Submission Corp. v. Dudas</u>, 413 F.3d 411, 414 (4th Cir. 2005)). Conversely, when applied horizontally "by a trial court to its own rulings," as is the case here, the doctrine is "malleable." <u>Chase</u>, 2020 WL 1914811, at *11 (quoting <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 515 (4th Cir. 2003)). The Fourth Circuit has held that although the law of the case doctrine applies to interlocutory rulings, under Rule 54, interlocutory rulings may be revised "before final judgment as the litigation develops and new facts or arguments come to light." <u>Carlson v. Bos. Sci. Corp.</u>, 856 F.3d 320, 325 (4th Cir. 2017).[5]

Defendants rely on <u>Judicial Watch v. Department of Army</u>, 466 F.Supp.2d 112 (D.D.C. 2006), and <u>King v. United States Department of Justice</u>, 292 F.Supp.3d 182, 187–

---

[5] For this reason, Defendants' references to Rules 59(e) and 60(b), which govern relief from final judgments, are unavailing. <u>See</u> <u>Childers v. Slater</u>, 197 F.R.D. 185, 190 (D.D.C. 2000) ("[I]nterlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." (quoting Advisory Comm. on Rules for Civ. Proc., <u>1946 Rep. Advisory Comm. on Civil Rules</u> 83 (1946)).

88 (D.D.C. 2017), in support of their argument that the Court's discretion is limited under the law of the case doctrine. In the Court's view, both cases are inapposite. In <u>Judicial Watch</u>, the District Court for the District of Columbia contrasted its discretion under the "as justice requires" standard with the limitations imposed by the law of the case doctrine when deciding whether to grant a motion to reconsider its prior grant of summary judgment based on a change of circumstances. 466 F.Supp.2d at 123. Similarly, <u>King</u> focused on the timeliness of a motion for reconsideration. 292 F.Supp.3d at 188. Thus, neither <u>Judicial Watch</u> nor <u>King</u> dealt with the issue presented here.[6]

Additionally, as Canty points out, this Court addressed the issue at bar in <u>Chase v. Department of Public Safety and Correctional Services</u>. Although the Fourth Circuit has not yet addressed whether the law of the case doctrine applies to a motion to dismiss an amended complaint, this Court has followed the Ninth Circuit's approach in <u>Askins v. United States Department of Homeland Security</u>, which provides:

> The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is "precluded" or "barred" by the prior ruling. When the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint. If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies. The

---

[6] Defendants also argue that Canty must show good cause or excusable neglect for failing to timely move for reconsideration of the Court's granting of summary judgment in Defendants Payne and Yutzy's favor. However, Rule 15(a) does not require a party to file a motion for reconsideration when seeking leave to amend. <u>See</u> Fed.R.Civ.P. 15(a). Rather, "a party may amend its pleading only with the opposing party's consent or the court's leave." <u>Id.</u> Counsel for Defendants consented to Canty's Motion to File Amended Complaint and the Court granted the Motion on April 14, 2021. (ECF No. 72).

district court is not, however, bound by any law of the case. The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was "clearly erroneous."

899 F.3d 1035, 1043 (9th Cir. 2018) (quoting United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998)); see Chase, 2020 WL 1914811, at *12–13 (quoting Askins, 899 F.3d at 1043).

As was the case in Chase, Canty's Complaint and the Amended Complaint are "subject to different pleading standards." See 2020 WL 1914811, at *13; Graves v. Lioi, 930 F.3d 307, 318 (4th Cir. 2019) (declining to apply the law of the case doctrine where the previously litigated issue arose under a different procedural posture). "The original complaint was evaluated under the liberal standard afforded to self-represented litigants . . . . In contrast, plaintiff filed his Amended Complaint through counsel and so it receives no deference." Chase, 2020 WL 1914811, at *13. Furthermore, Canty's Amended Complaint "adds clarifying detail and new factual allegations." See id.; see also Graves, 930 F.3d at 318 (declining to apply the law of the case doctrine where "different facts will lead to a different legal analysis"). In his Amended Complaint, Canty adds factual detail to his retaliation claims regarding Defendants' conduct in 2018 and alleges new facts regarding Defendants' retaliatory conduct that occurred after the initial Complaint. (See e.g., Am. Compl. ¶ 45). Considering the different pleading standards and new factual allegations, the law of the case doctrine does not preclude Canty from including claims

against Payne and Yutzy in the Amended Complaint. Thus, the Court will review the pending Motion under Rule 56 in the light most favorable to Canty.

### 2.    First Amendment Retaliation

As in his initial Complaint, the Amended Complaint alleges that Canty was retaliated against for exercising his First Amendment right to petition for redress of grievances. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, Canty must show that: (1) he engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the Defendant's conduct. See Constantine v. Rectors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." Shaw v. Murphy, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

Canty can establish retaliatory conduct if the defendant took an action that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine, 411 F.3d at 500). Canty must also demonstrate a "causal connection" between his First Amendment activity and the alleged retaliatory action. See Constantine, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the Defendants were aware of the First Amendment activity and that the retaliatory act was temporally proximate to that activity. Id.

Canty alleges that Defendants' (1) orders to refrain from making ARP submissions and grievances, (2) threats to discipline or charge Canty with rule violations if he continued to make such submissions, and (3) charges of rule violations against Canty in response to those submissions adversely affected Canty's First Amendment rights.[7] As set forth above, on May 10, 2018, Canty was found guilty of a Notice of Inmate Rule Violation for allegedly threatening Payne and Adkins, resulting in 200 days of disciplinary segregation. Canty contends that the COs wrote the rule violation in retaliation for his filing ARPs and grievances and that the Notice was a "completely falsified" "pretext for Lt. Whiteman's true motive . . . to punish Canty for his exercise of his First Amendment Rights and to prevent him from exercising those rights in the future." (Am. Compl. ¶ 43). With respect to Payne and Yutzy's conduct, the events leading up to this rule violation are as follows:

---

[7] Canty also alleges retaliation regarding the COs' orders to refrain from filing ARPs and grievances and additional threats from COs to discipline him if he continued to file ARPs and grievances. For the purposes of this Motion, however, these allegations are irrelevant as they do not relate to conduct by Payne or Yutzy.

On April 24, 2018, thirty minutes after Canty tried to give McKenzie an ARP regarding Whiteman's failure to respond to previous complaints concerning housing, Payne, Yutzy, and McKenzie entered Canty's cell. Payne and McKenzie began mishandling and destroying Canty's personal property. (Id. ¶ 39). Payne told Canty to "shut up" because "Canty keeps writing grievances on [his] buddies Adkins and McKenzie" and it was "[their] turn." (Id.). Canty alleges that at this time, the COs were aware of Canty's many ARP submissions and his intention to file this lawsuit. (Id. ¶ 40). Yutzy eventually led Canty to a holding cell where he informed Canty that the COs who conducted the cell search, Payne and McKenzie, falsely accused Canty of threatening Payne and Adkins. (Id. ¶ 41). Sometime thereafter, a CO moved Canty to disciplinary segregation and Vanmeter provided Canty with a partial copy of the Notice of Inmate Rule Violation, including the aforementioned false allegation. (Id. ¶ 43).

Payne and Yutzy raise no substantive claims refuting Canty's allegations of retaliation. Construing the facts alleged in the Amended Complaint in the light most favorable to Canty, it appears clear that Payne and Yutzy were aware of Canty's previous complaints against other COs. Indeed, in Yutzy's presence, Payne announced that the COs' actions were a result of Canty's multiple grievances written against Adkins and McKenzie. Shortly after Payne's threat during the cell search, Yutzy also alerted Canty to Payne's intention to file a Notice of Inmate Rule Violation against Canty. Given the temporal proximity between Canty's First Amendment-protected activity and the adverse actions taken against Canty, there is a colorable inference that Payne and Yutzy's actions—including searching Canty's cell, threatening him, issuing a Notice of Inmate Rule

Violation, and moving him to disciplinary segregation—constituted retaliation for filing ARPs and grievances. Accordingly, Payne and Yutzy are not entitled to summary judgment as to Canty's First Amendment retaliation claim.

### 3.    Conspiracy

To establish a civil conspiracy under § 1983, Canty must present evidence that Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. See Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). "In other words, to survive a properly supported summary judgment motion, [a plaintiff's] evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id. Without a common plan between alleged co-conspirators to deprive a plaintiff of a constitutional right, the independent acts of two or more wrongdoers cannot amount to a conspiracy. See Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C., 639 F.2d 1073, 1075–76 (4th Cir. 1981). Thus, Canty must allege facts establishing that Defendants shared a "unity of purpose or a common design" to injure him. Am. Tobacco Co. v. United States, 328 U.S. 781, 809–10 (1946).

"A conspiracy may . . . be 'inferred from the things actually done.'" Murdaugh, 639 F.2d at 1075 (quoting Overseas Motors, Inc. v. Imported Motors Ltd., 375 F.Supp. 499, 532 (E.D.Mich. 1974)). However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. Id.

Canty alleges that Defendants acted in concert to retaliate against him by (1) ordering him to refrain from submitting ARPs and grievances, (2) threatening to discipline Canty if he continued to file ARPs and grievances, and (3) charging Canty with rule violations in response to his ARPs and grievances. Canty asserts that Whiteman and other COs, including Payne and Yutzy, conspired to approve or issue the Notice of Inmate Rule violation that resulted in the 200 days of disciplinary segregation to punish Canty for exercising his First Amendment rights.

As a preliminary matter, Payne and Yutzy do not deny conspiring with other COs to punish Canty for filing ARPs and grievances. As such, Defendants have not presented sufficient evidence to prove as a matter of law that they were not acting in concert to suppress Canty's First Amendment rights.

The alleged facts show that Payne and Yutzy were aware of the numerous grievances filed by Canty against fellow COs. Canty has not alleged that Payne and Yutzy ordered Canty to stop filing grievances. Nonetheless, Canty's unrefuted allegations describe a conspiracy in which Payne, Yutzy, and the four other named Defendants (1) acted together to threaten to discipline Canty if he continued filing grievances and (2) actually disciplined Canty through the issuance of a Notice of Inmate Rule violation, resulting in 200 days of disciplinary segregation. According to the Amended Complaint, Payne and Yutzy acted in concert with other Defendants when Payne and Yutzy searched Canty's cell, Payne verbally threatened Canty in Yutzy's presence, and Yutzy alerted Canty as to Payne and McKenzie's intention to file the Notice of Inmate Rule violation against Canty. As discussed above, the alleged overt acts of threatening Canty and issuing

the Notice of Inmate Rule violation furthered Defendants' intention to stop Canty from filing additional grievances, therefore depriving him of his constitutional right. Accordingly, Payne and Yutzy are not entitled to summary judgment on Canty's civil conspiracy claim.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 78). A separate Order follows.

Entered this 28th day of March, 2022.


_____/s/_____
George L. Russell, III
United States District Judge