IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAFON CANTY,                              *

     Plaintiff,                         *

v.                                        *        Civil Action No. GLR-18-1404

DAYENA M. CORCORAN,                       *
et al.,
                                          *

     Defendants.                        *

                                          *
                                         ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Lieutenant Vaughn Whiteman, Sergeant Derek Baer, Officer Christopher McKenzie, Officer Randy Adkins, Officer Jeremy Payne, and Officer Justin Yutzy's (collectively, "Defendants") Motion for Summary Judgment (ECF No. 123) and Plaintiff Dafon Canty's Motion for Leave to File Surreply (ECF No. 137). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will deny Defendants' Motion and grant Canty's Motion.

## I.     BACKGROUND

### A.    Factual Background

Canty is a state prison inmate presently housed at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Canty Aff. ¶ 2, ECF No. 130-2).[1] In his

---

[1] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Affidavit, he avers that Defendants violated his civil rights by retaliating against him in response to his initiation of administrative remedy procedures ("ARP") beginning in 2018 and continuing through 2022. (See id. ¶¶ 5–22). Canty also alleges that Defendants undertook these retaliatory acts in concert with one another, amounting to a civil conspiracy. (See id. ¶¶ 7, 11, 13).

### 1.      Retaliation in 2018

On January 3, 2018, Canty was assigned to Housing Unit #2. (Canty Aff. ¶ 3). Canty grew concerned after spotting Darryl Powell, an inmate he had prior altercations with, in the same housing unit. (Id.). Canty became worried that they might get into another fight, so he submitted a "request-slip" to Sergeant Gregory Forney about his concerns. (Id.). When Forney did not respond, Canty requested to meet with him in person. (Id.). During the meeting, Canty told Forney that he felt threatened by Powell and Canty's cellmate, Courtney Bryant. (Id.). Forney explained that he was transferring to another correctional institution, but Canty could raise any concerns with Forney's replacement. (Id.).

In January 2018, Canty filed two ARPs outlining his concerns, and these ARPs were either ignored or dismissed. (Canty Aff. ¶ 5; Feb. 3, 2018 ARP at 1–2, ECF No. 130-3 (stating that Canty submitted an ARP to McKenzie on January 26, 2018, but institutional staff "abandon[ed"] the ARP)). On February 3, 2018, he submitted an ARP to the Maryland Division of Correction's Office of the Commissioner, seeking a transfer to another cell and a modified recreation schedule. (Canty Aff. ¶ 5; Feb. 3, 2018 ARP at 2–3). The Office forwarded the ARP to NBCI, and NBCI dismissed it for procedural reasons. (Feb. 18, 2018

Appeal at 1, ECF No. 130-12). Canty appealed the dismissal to the Office of Commissioner, which returned the ARP to NBCI for it to be reconsidered. (Id. at 2–6).

On February 28, 2018, Canty wrote a letter to Defendant Baer regarding safety concerns with his housing and lack of response from administration. (Canty Aff. ¶ 5). Canty also complained that Defendants McKenzie and Adkins had failed to address his concerns, and he wrote informal complaints about the same to Defendant William Bohrer, the Chief of NBCI Security, and Assistant Warden Jeffrey Nines. (Id.). On March 1, 2018, Canty filed another ARP regarding his cell assignment and recreation schedule. (Mar. 1, 2018 ARP at 1, ECF No. 130-13). On March 6, 2018, Canty spoke with Adkins, who told him to "stop asking to move and to stop writing grievances, or [] Baer would place [him] in disciplinary segregation." (Canty Aff. ¶ 6). On March 5, 2018, Canty wrote another informal complaint about his placement and recreation schedule to Nines, but Canty did not receive a response. (Id. ¶ 5). The next day, Canty again spoke to Adkins about switching cells, but Adkins did nothing. (Id. ¶ 6).

On March 12, 2018, Canty and Bryant got into a violent fight. (Canty Aff. ¶ 7). After the fight, Canty tried to talk to Adkins and Baer again about his safety concerns. (Id.). They allegedly told him that they did not care about his problems, he should stop filing grievances, he would not be moved, and he needed to fight back. (Id.). Canty told the officers that he would report them, and Baer responded that they "could come up with a basis to write [Canty] up." (Id.). Soon after, Canty filed another ARP with the Commissioner, this time complaining about Adkin and Baer's attempts to stymy his complaints. (Id. ¶ 8).

On March 13, 2018, Baer, Whiteman, McKenzie, and Adkins told Canty that if he moved out of his cell or continued to file grievances, he would be sent to disciplinary segregation. (Id. ¶ 9). Later that day, Canty wrote another letter to the Commissioner, updating him on his latest encounter with Baer, Whiteman, McKenzie, and Adkins. (Id.). On March 31, 2018, McKenzie issued a Notice of Inmate Rule Violation alleging that Canty had entered an "out of bounds" area on his floor. (Id.; Mar. 31, 2018 Inmate Rule Violation at 1, ECF No. 130-6). Canty alleges that McKenzie's allegation was "not in good faith," made to punish him for his complaints, and "an act of retaliation for [his] exercise of [his] First Amendment rights." (Canty Aff. ¶ 9). As a result of McKenzie's Notice, Canty was restricted to his cell for thirty days. (Id.).

On the morning of April 24, 2018, Canty attempted to give McKenzie an ARP detailing Defendants' retaliation for his previous complaints, but McKenzie "refused to accept [the] ARP and complained that [Canty] continued to write complaints." (Id. ¶ 10). Shortly thereafter, McKenzie, Payne, and Yutzy entered Canty's cell and told him to "cuff up." (Id. ¶ 11). Payne and McKenzie then searched Canty's cell, mishandling and destroying Canty's personal property. (Id.). They poured shampoo on Canty's books and intentionally broke Canty's MP3 player. (Id.). When Canty complained that they were ruining his things, Payne told him to "shut up" and declared that it was "[their] turn" because Canty "ke[pt] writing grievances on [his] buddies Adkins and McKenzie." (Id.). Canty alleges that they conducted this search in retaliation for his complaints. (Id.).

After the cell search concluded, Yutzy escorted Canty to a holding cell. (Id. ¶ 12). Yutzy told Canty that Payne and McKenzie had accused Canty of threatening them. (Id.).

Canty contends that this allegation is false. (Id.). While Canty was waiting to be escorted to disciplinary segregation, he saw Whiteman and asked why the officers had falsely accused him. (Id.). Whiteman replied, as he had previously told Canty, that if Canty continued to submit grievances, he would pay for it and be placed in disciplinary segregation so that he could not file additional complains. (Id.).

After Canty was moved to disciplinary segregation, he received a partial copy of a second Notice of Inmate Rule Violation, which alleged Canty had threatened Payne and Adkins. (Id. ¶ 14; see Inmate Hr'g R. at 1–2, ECF No. 130-16). Canty alleges this Notice was done in retaliation to punish him for exercising his First Amendment rights. (Canty Aff. ¶ 14). Canty was found guilty of the Notice's allegations and was sentenced to 200 days in disciplinary segregation. (Id. at 15). Canty requested a witness, Jibril Shaheed, at the hearing, but no officers came to escort Shaheed to the hearing. (Id. at 14). Further, Canty was asked to step out of the room while surveillance footage was reviewed, and officers later claimed that the footage was obscured. (Id.). Canty doubts that the footage was obscured given the number of cameras on the tier. (Id.).

Because Canty was placed in disciplinary segregation, he was not able to write complaints about McKenzie, Payne, and Yutzy's retaliatory search of his cell. (Id. ¶ 16).

### 2.    Retaliation after Canty Filed Suit

On July 2, 2019, when Canty retired from disciplinary segregation, Adkins referred to him as a "lawsuit rat" and said "[t]his is going to be fun." (Id. ¶ 18). Canty alleges that on March 9, 2020, after he filed this lawsuit, Whiteman approached him regarding an ARP he had filed concerning his limited access to the prison's law library. (Id.). Whiteman asked

him to "sign off on" or withdraw the ARP, but Canty refused. (Id.). Canty alleges that Whiteman became angry and said "something to the effect of, '[t]hink about what you're doing, remember this works both ways, and you know what's going to happen. I always get the last laugh, the same as the last time up you kept writing us up.'" (Id.).

On February 1, 2021, Canty filed an ARP alleging he had been assaulted by an officer. (Feb. 1, 2021 ARP at 1, ECF No. 130-23; Canty Aff. ¶ 19). Four days later, on February 5, 2021, Whiteman and other unidentified officers approached Canty and made comments to the effect of, "[l]et's show Canty black lives don't matter, plus this pussy likes filing lawsuits, thinks he's doing something, damn, I thought the street code was you a snitch, n****r, you tell." (Canty Aff. ¶ 19). When Canty threatened to report the officers for their behavior, Whiteman said something to the effect of, "shut your fucking mouth before I put you in the holding cell and find some contraband if you don't shut up." (Id.).

Whiteman searched Canty's cell, poured out bottles of lotion and body wash, threw Canty's new MP3 player on the floor, and damaged two of Canty's books. (Id.). Whiteman remarked that "if [Canty] were to file any further complaints, Defendant Whiteman would place [him] under another 200 days of disciplinary segregation." (Id.).

In June 2021, after Canty spoke with his counsel regarding the case, officers placed Canty in an isolation cell for five days. (Id. ¶ 20). On December 15, 2021, Canty was involved in a violent altercation in which another inmate stabbed him. (Id. ¶ 21). Canty thought "the violation against [him] would be dismissed, as [he] had been stabbed by another inmate," but instead, he was placed in disciplinary segregation pending charges, and some of his property was lost or stolen when he was moved to disciplinary segregation.

(Id.). He filed an ARP about the lost property. (Id.). Additionally, Canty remained in disciplinary segregation through the holidays and Officer Murray, a non-Defendant officer, informed him that he was "not going nowhere" because he "told on Whiteman." (Id.). When Canty later returned to the general population on December 31, 2021, he learned from other inmates that "Whiteman had spread a rumor that Canty was 'snitching' on fellow inmates" in an apparent effort to jeopardize Canty's safety. (Id. ¶ 22). On April 29, 2022, Canty heard from two inmates that Adkins threatened to "beat the shit" out of him. (Id. ¶ 23).

**B.   Procedural History**

On May 9, 2018, Canty filed his original pro se Complaint naming ten defendants. (ECF No. 1). Canty filed a Supplemental Complaint on August 16, 2018, naming three additional defendants: Payne, Yutzy, and Officer Michael Vanmeter. (ECF No. 7). On March 14, 2019, the original ten defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 23). On March 31, 2020, the Court denied the Motion, finding that it was not ripe for resolution because Payne, Yutzy, and Vanmeter had not been served with the Complaint. (ECF No. 41). On August 19, 2020, Payne, Yutzy, and Vanmeter sought to join the previously filed dispositive Motion. (ECF No. 46). Two days later, the original defendants filed a Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 47). On September 8, 2020, the Court granted Payne, Yutzy, and Vanmeter's Motion to Join Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (ECF No. 49).

On November 23, 2020, this Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF Nos. 54, 55). The Court entered judgment in favor of Defendants Corcoran, Nines, Bohrer, Johnson, Forney, Yutzy, Payne, and Vanmeter. (Order ¶¶ 2–3, ECF No. 55). The Court denied the Motion as to Canty's First Amendment retaliation and civil conspiracy claims against Defendants Baer, Whiteman, McKenzie, and Adkins. (Id. ¶ 4). The Court also granted Canty's Motion for Appointment of Counsel. (Id. ¶ 9).

On April 14, 2021, Canty, through counsel, filed a Consent Motion for Leave to File Amended Complaint that the Court granted that same day. (ECF Nos. 71, 72). On June 29, 2021, Canty filed an Amended Complaint in which he, inter alia, asserts claims against Payne and Yutzy, in whose favor the Court previously entered judgment. (Am. Compl. ¶¶ 6–7, ECF No. 77). The two-count Amended Complaint asserts the following claims against Defendants Whiteman, Baer, McKenzie, Adkins, Payne, and Yutzy: First Amendment retaliation under 42 U.S.C. § 1983 (Count I); and civil conspiracy under 42 U.S.C. § 1983 (Count II). (Id. ¶¶ 58–68). Canty seeks declaratory relief, compensatory and punitive damages, costs, and attorneys' fees. (Id. at 15–16).

On July 29, 2021, Payne and Yutzy filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (ECF No. 78). The Court denied their Motion on March 28, 2022. (ECF No. 100). After engaging in discovery, Defendants filed the instant Motion for Summary Judgment on June 5, 2023. (ECF No. 123). On August 9, 2023, Canty filed an Opposition, (ECF No. 130), and Defendants filed a Reply on September 22, 2023, (ECF

No. 135). Canty also filed a Motion for Leave to File Surreply on October 9, 2023. (ECF No. 137). Defendants filed an Opposition on October 13, 2023, (ECF No. 138), and Canty filed a Reply on October 27, 2023, (ECF No. 139).

## II.   DISCUSSION

### A.   Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 140 (4th Cir. 2008) (quoting <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law. <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**B.    <u>Analysis.</u>**

**1.    Motion for Leave to File Surreply**

As a preliminary matter, the Court will address Canty's Motion for Leave to File Surreply. (ECF No. 137). Unless otherwise ordered by the Court, a party may not file a surreply. Local Rule 105.2(a). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in the opposing party's reply.

Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md.2003), aff'd 85 Fed.Appx. 960 (4th Cir. 2004). Canty moves for leave to file a short surreply to contest two arguments that Defendants raised for the first time in their Reply:

> (i) that the Court may not consider facts that post-date the Complaint but were disclosed in discovery and are part of the [alleged] ongoing conspiracy . . . and (ii) that to prevail on his retaliation claim, Canty must establish that the adverse actions he suffered presented an atypical, significant hardship under [] Sandin v. Conner, 515 U.S. 472 (1995), and its progeny.[2]

(Mot. Leave File Surreply at 1, ECF No. 137). Defendants contend that the first argument was not "new," because they offered it in response to Canty's inclusion of facts outside the Amended Complaint in his Opposition.[3] (See Opp'n Mot. Leave File Surreply at 7–8, ECF No. 138). Thus, according to Defendants, Canty could have anticipated that Defendants would object to the Court's consideration of these facts. (See id.). In support of this argument, Defendants cite Khoury, where this Court declined to allow a surreply related to the sufficiency of plaintiff's Rule 56(f) affidavit. 268 F.Supp.2d at 606. In her affidavit, the plaintiff sought time for discovery before the Court considered the motion for summary judgment. Id. The Court found that the plaintiff had first introduced the affidavit when she

---

[2] Sandin concerns a due process claim, not a retaliation claim, and thus, its standard is inapplicable to the instant case. See Sandin, 515 U.S. at 472.

[3] Defendants' only explanation as to why Canty should not be permitted to file a surreply in response to their second argument concerning Sandin is that Canty's surreply is futile, and Defendants are entitled to summary judgment. (Opp'n Mot. Leave File Surreply at 7–8, ECF No. 138). Thus, Defendants seemingly concede that their argument was raised for the first time in their Reply, and that Canty is entitled to a surreply on this point.

attached it to her opposition and had the opportunity to support it with facts in her opposition brief. Id.

Khoury is distinguishable from the instant case, and the Court will grant Canty's Motion for Leave to File Surreply. In Khoury, the plaintiff raised the issue of whether discovery was necessary in her Rule 56(f) affidavit, and she should have anticipated an opposing argument along those same lines. See id. Here, Canty simply included facts disclosed in discovery in his Opposition. While Canty might have anticipated an argument related to the sufficiency of that evidence to establish a genuine dispute of material fact, Canty could not have known that Defendants would argue the Court can only consider the Amended Complaint's facts in its analysis.[4] Accordingly, because the two arguments set forth above were raised for the first time in Defendants' Reply and not in response to Canty's own arguments, the Court will exercise its discretion to grant Canty's Motion for Leave to File Surreply. See EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part sub nom., E.E.O.C. v. Freeman, 778 F.3d 463 (4th Cir. 2015) ("Allowing a party to file a sur-reply is within the Court's discretion.").

---

[4] The Court agrees with Canty that on a motion for summary judgment, it is proper to consider facts beyond those in the original pleadings. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) ("The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists."); Fed.R.Civ.P. 56(c)(1)(A) (listing forms of evidence a party may submit in support of a motion for summary judgment). Accordingly, the Court will consider the facts in the record, not merely those in the Amended Complaint.

## 2.      Exhaustion of Remedies

Before turning to the merits of Canty's case, the Court will address Defendants'

argument that Canty's claims are subject to dismissal under the Prisoner Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e, because they have not been properly presented through

the administrative remedy procedure. (Mot. Summ. J. ["Mot."] at 23–24, ECF No. 123).

The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or

detained in any facility who is accused of, convicted of, sentenced for, or adjudicated

delinquent for, violations of criminal law or the terms and conditions of parole, probation,

pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison

conditions" encompasses "all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d

523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Courts have held that

"prison conditions" includes allegations of retaliation, see Lawrence v. Goord, 304 F.3d

198 (2d Cir. 2002); Miller v. Fed. Bureau of Prisons, 703 F.Supp.2d 8 (D.D.C. 2010)), as

well as allegations of § 1983 conspiracy (Soto v. Belcher, 339 F.Supp.2d 592 (S.D.N.Y.

2004)). Thus, the PLRA's exhaustion requirements apply to Canty's claims.

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading standard on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Anderson v. XYZ Corr. Health Services, Inc., 407 F.2d 674, 682 (4th Cir. 2005). A claim that has not been exhausted may not be considered by this Court. See Jones, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. See Ross v. Blake, 578 U.S. 632, 639 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007). Inmates are not required to exhaust their administrative remedies when that process has been made unavailable to them.

There is an established administrative remedy procedure process that applies to all Maryland prisons, which consists of multiple steps. See COMAR 12.02.28.01, et seq. First, a prisoner is required to file his ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under Md. Code Ann., Corr. Servs. ["C.S."] § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

If the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner has thirty days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Corrections denies an appeal, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO"). COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal

constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). Thus, Canty's failure to appeal his ARPs to the IGO is a failure to properly exhaust administrative remedies.

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In Ross v. Blake, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA," rejecting a "special circumstances" exception to the requirement. 578 U.S. 632, 635–36 (2016). But the Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 1855. An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)); see also Moore, 517 F.3d at 725 (noting an administrative remedy is not "available if a prisoner, through no fault of his own, was prevented from availing himself of it"). Thus, an inmate must complete the prison's internal appeals process, if possible, before filing suit. See Chase, 286 F.Supp.2d at 529–30. Exhaustion is required before filing suits targeting unconstitutional conditions as well as those concerning unconstitutional conduct. See Porter, 534 U.S. at 528. Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. See Booth, 532 U.S. at 741 (requiring exhaustion even where prisoner only sought money damages, which he could not receive through the prison grievance process). The Ross Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite

what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u> Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." <u>Id.</u> The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860.

Here, Canty filed several ARPs and appeals related to his retaliation and conspiracy claims, (<u>see, e.g.</u>, Mar. 2, 2018 ARP at 1, ECF No. 130-2; May 10, 2018 Appeal at 1, ECF No. 130-17; Sept. 30, 2020 ARP at 1, ECF No. 130-19), but the record does not show that he appealed his complaints to the highest possible level. Canty argues that the first and third circumstances excuse his failure to exhaust his remedies. (<u>See</u> Opp'n Mot. Summ. J. ["Opp'n"] at 20–21, ECF No. 130). He contends that Defendants refused to accept an ARP, failed to process other ARPs, and threatened and intimidated Canty to prevent him from filing complaints. (Canty Aff. ¶¶ 5–22). Defendants deny these allegations. (<u>See, e.g.</u>, Baer Decl. ¶¶ 5–27, ECF No. 133-5). As a result, there exists a genuine dispute of material fact with regard to the availability of the administrative remedy process for Canty's claims. <u>See</u> <u>Von Poole v. NBCI</u>, No. GLR-17-1594, 2019 WL 4805681, at *9 (D.Md. Sept. 30, 2019) (finding a genuine dispute of material fact as to whether the administrative process was available when plaintiff alleged threats from defendant officers concerning his ARPs and that officers failed to process his ARPs). Accordingly, the Court will deny Defendants' Motion to the extent it seeks to dismiss Canty's claims on exhaustion grounds.

### 3.     First Amendment Retaliation

Defendants allege that Canty cannot meet his evidentiary burden regarding the retaliation claim. (Mot. at 13–14). "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, Canty must show that: (1) he engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the Defendant's conduct. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." Shaw v. Murphy, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017).

Canty can establish retaliatory conduct if the defendant took an action that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249–50 (4th Cir. 2017) (quoting Washington v. Cnty of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)). Canty must also demonstrate a "causal

connection" between his First Amendment activity and the alleged retaliatory action. See Constantine, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the Defendants were aware of the First Amendment activity and the retaliatory act was temporally proximate to that activity. Id.

Defendants concede that Canty engaged in protected First Amendment activity, (Mot. at 19), but they argue that he cannot satisfy the second or third elements of his retaliation claim for the following reasons: (1) as to Baer in particular, there is no evidence to show that he took action that adversely affected Canty's First Amendment rights, (id. at 8, 9); (2) the inmate rule violation that McKenzie filed was legitimate and not retaliatory, (id. at 13–15); (3) Defendants did not destroy Canty's property while searching his cell, (id. at 16–17); and (4) Defendants did not retaliate due to Canty's filing of the instant suit because they had not yet learned of the suit at the time that the allegedly retaliatory rule violation occurred, (id. at 17). The Court will address these arguments in turn.

First, with regards to Baer, Canty avers that Baer: threatened him with punishment if he continued to write grievances, (Canty Aff. ¶ 6); told Canty that he and Adkins did not care about Canty's problems and that he would not be moved, (id. ¶ 7), and if he was moved, it would be to disciplinary segregation (id. ¶ 9); and told Canty that officers would come up with a reason to write him up if he continued to complain, (id. ¶ 7). Baer denies that he said any of this to Canty. (Baer Decl. ¶¶ 5–27). Accordingly, there is a genuine dispute of material fact as to whether Baer took action to adversely affect Canty's First Amendment rights, and the Court will deny Defendants' Motion to the extent it seeks summary judgment in Baer's favor on the retaliation claim.

Second, Defendants argue that the inmate rule violation issued by McKenzie in March 2018 could not be considered retaliatory because McKenzie had a legitimate basis for issuing the violation. They cite Ashann-Ra v. Com. of Va., 112 F.Supp.2d 559, 574 (W.D.Va. 2000), where the United States District Court for the Western District of Virginia granted summary judgment to defendants on a retaliation claim because the plaintiff failed to show that he was placed in segregation because of his exercise of his First Amendment rights. Specifically, the plaintiff had been told to shave in accordance with prison rules, and he informed officers that shaving caused skin issues for him, and that he had filed a lawsuit to have the rule declared unconstitutional. Id. at 573. Shortly thereafter, officers placed the plaintiff in segregation for failing to comply with the rule. Id. The court found that the plaintiff failed to demonstrate a causal connection between his lawsuit and his placement in segregation, and that officers had a legitimate reason to punish him. Id. at 574.

There are two key differences between the instant case and Ashann-Ra. First, in Ashann-Ra, the situation set forth above was the only allegation of retaliation, whereas here, Canty alleges a pattern of threats and retaliatory conduct beyond McKenzie's 2018 rule violation. Second, Defendants expressly threatened Canty with write-ups and segregation prior to McKenzie's act, and thus, a reasonable jury could conclude that regardless of whether there may have been a real rule violation, McKenzie wrote him up for retaliatory reasons. Consequently, Defendants are not entitled to summary judgment on this basis.

As to Defendants' final arguments, the Court finds that there are genuine issues of material fact regarding whether Defendants damaged Canty's property and whether they retaliated against him for filing grievances and the instant lawsuit. Canty avers that Defendants searched his cell and damaged his property, and that they made threats and placed him disciplinary segregation as a result of his many grievances and filing the instant suit. Defendants deny this and state that they were not aware of this lawsuit until after some of the allegedly retaliatory acts had already occurred. (See Mot. at 17). These different accounts present a factual dispute for a jury. The Court also notes that even if Defendants learned of this suit after some retaliatory conduct had already occurred, Canty also contends that they retaliated against him for filing ARPs as early as 2018, not just for filing the Complaint in this case. Thus, a reasonable jury could conclude that Defendants retaliated against Canty for exercising his First Amendment rights.

### 4.    Conspiracy

"To establish a civil conspiracy under § 1983, the plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right." McDaniel v. Arnold, 898 F.Supp.2d 809, 846–47 (D.Md. 2012) (cleaned up) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). Towards this end, there must be a showing that the defendants entered into some sort of an agreement, whether positive or tacit, to deprive the plaintiff of a constitutional right. See id. at 847; see also Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) (noting that a conspiracy claimant "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional

rights."). Without a common plan between alleged co-conspirators to deprive a plaintiff of a constitutional right, the independent acts of two or more wrongdoers cannot amount to a conspiracy. See Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C., 639 F.2d 1073, 1075–76 (4th Cir. 1981). Thus, Canty must allege facts establishing that Defendants shared a "unity of purpose or a common design" to injure him. Am. Tobacco Co. v. United States, 328 U.S. 781, 810 (1946).

Defendants argue that they are entitled to summary judgment on the civil conspiracy claim because there was no agreement—only "parallel performance of their official duties as correctional officers." (Mot. at 23). The Court disagrees. Canty has provided sufficient evidence to create a genuine dispute of material fact as to whether Defendants conspired to violate his First Amendment rights. For example, Canty states that: Adkins and Baer jointly told him to stop filing grievances, (Canty Aff. ¶¶ 6–8); Baer, Whiteman, McKenzie, and Adkins said that if Canty wrote more complaints, he would be sent to disciplinary segregation, (id. ¶ 9); McKenzie, Payne, and Yutzy searched Canty's cell, damaged his property, and Payne told him it was "[their] turn" because Canty had written grievances about his "buddies" Adkins and McKenzie, (id. ¶¶ 11, 16); in response to Canty asking why he had been accused of threating Payne and Adkins, Whiteman told him that he would be placed in disciplinary segregation if he filed more grievances, (id. ¶ 12). Construing these facts in the light most favorable to Canty, the Court finds that a reasonable jury could conclude Defendants conspired against him to violate his First Amendment rights. Defendants dispute Canty's account, but their alternate version of facts presents a

credibility issue for a jury. Accordingly, Defendants are not entitled to summary judgment on Canty's civil conspiracy claim.

### 5. Eleventh Amendment Immunity and Qualified Immunity

Next, Defendants allege that they are immune from suit in their official capacities under the Eleventh Amendment, and that Baer and Adkins are entitled to qualified immunity in their individual capacities. (Mot. at 7, 28). First, as to the Eleventh Amendment argument, it is true that the Eleventh Amendment generally bars suits against state officials in their official capacities under 28 U.S.C. § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). However, Canty sued Defendants in their individual capacities only, (Opp'n at 13), and therefore, the immunity principles in Will do not apply here.

Second, under the doctrine of qualified immunity, public officials who engage in unconstitutional conduct "may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation and internal quotation marks omitted). An officer violates a "clearly established" right when "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). "The burden of establishing a qualified immunity defense rests on the official

asserting the defense." <u>Wingate v. Fulford</u>, 987 F.3d 299, 302 (4th Cir. 2021), <u>as amended</u> (Feb. 5, 2021).

Defendants argue that Baer and Adkins did not "participate[] in a search of Plaintiff's cell, the destruction of Plaintiff's personal property, or the filing of an allegedly retaliatory [rule violations] against Canty." (Mot. at 30). Therefore, according to Defendants, Baer and Adkins did not take any action that violates a clearly established statutory or constitutional right. (<u>Id.</u>). The Court disagrees. Canty states that: Baer and Adkins told him to stop writing grievances or they would put in him disciplinary segregation, (Canty Aff. ¶¶ 6, 9); they told him to stop filing grievances because he would not be moved to a new cell, and he should fight back against his aggressors (<u>id.</u> ¶ 7); and Baer told Canty that "write-ups go both ways" and that officers would find a basis to write him up if he continued to complain, (id. ¶ 7). As the Court explained in its March 28, 2022 Memorandum Opinion, an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. (Nov. 23, 2020 Mem. Op. at 43–44, ECF No. 54 (citing <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 545 (4th Cir. 2017))). This right was clearly established in 2018 when the first allegedly unconstitutional act occurred. (Nov. 23, 2020 Mem. Op. at 44). Thus, the Court finds that Adkins and Baer are not entitled to qualified immunity because Canty has adequately shown that their conduct violated his First Amendment rights.

## III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Summary Judgment (ECF No. 123) and grant Canty's Motion for Leave to File Surreply (ECF No. 137). A separate Order follows.

Entered this 7th day of December, 2023.


                                              /s/
                                        George L. Russell, III
                                        United States District Judge